■ WESTHAB, INC., et al., Respondents, v MARIAM McBAIN, Appellant.—In an action for specific performance of a contract for the sale of real properties, the defendant appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Westchester County (Zeck, J.H.O.), entered April 22, 1988, as, after a nonjury trial, (1) directed her to specifically perform the contract for the sale of the real properties to the plaintiffs, (2) directed her to apply for tax lot apportionments involving the real properties, and (3) dismissed her counterclaim for reasonable use and occupancy payments.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

The plaintiff Westhab, Inc. (hereinafter Westhab) and the defendant were parties to a lease with respect to a certain building owned by the defendant. The lease contained an option to purchase the leased property and another building owned by the defendant. After Westhab's notification of its intent to exercise the option but before the execution of the contract of sale, a title report revealed that the two buildings were listed on the City of Yonkers tax map as situated on the same tax lots as two other buildings owned by the defendant which were not part of the parties' bargain. As a result, upon the transfer of title, a tax lot apportionment would be necessary in order to generate separate tax bills for all of the buildings. The contract of sale, however, contained no reference to this tax lot apportionment problem, but merely contained a clause stating, "SELLER shall give and PURCHASER shall accept such title as a reputable Westchester title company * * * will be willing to approve and insure" and that the sale shall be in accordance with all contract provisions. The testimony and documentary evidence clearly established that the parties contemplated that in order to acquire the tax lot apportionment, the defendant would merely have to perform the ministerial act of submitting an application and the appropriate fee to the taxing authority.

Subsequently, at a meeting with Yonkers city officials, the parties learned that a tax lot apportionment would require, *inter alia,* new certificates of occupancy for all the buildings, including the two buildings to be retained by the defendant, cross easements amongst the contiguous buildings assuring emergency egress, certain setback variances and possible floor-to-area ratio variances. The parties later learned that obtaining a certificate of occupancy would require a building, electrical, fire and housing inspection to determine if the buildings met the city building code and if they did not, remedial work would be required. After months of attempting to close the sale with the defendant, Westhab's president met again with city officials and the requirements of obtaining easements and variances were waived. As noted by the Supreme Court, it remained unclear whether the necessity of obtaining new certificates of occupancy was also waived with respect to the two buildings to be retained by the defendant.

The correspondence admitted into evidence at trial and the testimony of the parties made it clear that Westhab was willing to purchase the properties without the tax lot appor-

tionments and the testimony of the counsel for Ticor Title Guarantee Company indicated that it would have insured the titles subject to any loss that may have been incurred in the future by reason of the nonapportionment of the tax lots after closing.

The defendant's contention that the alleged tax lot apportionment defect made it impossible for her to transfer marketable or insurable title in accordance with the contract and thus allowed her to rescind the contract is without merit.

The title insurance clause in the contract was not violated since Ticor Title Guarantee Company would have insured the title subject to the tax lot apportionment problem. Further, any problem created by the tax lot apportionment requirement was totally mitigated by (1) Westhab's willingness to perform the work required to obtain the tax lot apportionment and to purchase the properties without amelioration of the tax lot apportionment problem, and (2) the provision of the judgment "hold[ing the] Defendant harmless from any and all costs related to obtaining apportionment * * * whether direct or indirect, except for regular application fees, if any". We note that this part of the order was obviously intended to cover the cost of any remedial work required to obtain new certificates of occupancy for the two buildings to be retained by the defendant, if necessary. While Westhab contends no such requirement is now necessary, should it be incorrect, the defendant should also be held harmless for these costs.

We have considered the other contentions of the defendant and find them to be without merit for reasons stated by Judicial Hearing Officer Zeck in his memorandum decision. Bracken, J. P., Lawrence, Weinstein and Balletta, JJ., concur.